UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

SARAH J. BABCOCK,
(a.k.a. JOHN BABCOCK),

                            No. CV-07-5073-FVS

              Plaintiff,

                            ORDER GRANTING DEFENDANTS'
                            MOTION FOR SUMMARY JUDGMENT

        v.

HAROLD CLARKE, RUBEN CEDENO,
JEFFREY A. UTTECHT, STEPHEN
SINCLAIR, HAL SNIVELY, S. FLEENOR
and C. STERLIN,

              Defendants.

        **THIS MATTER** came before the Court on Defendants' December 30,
2008, motion for summary judgment for dismissal of Plaintiff's claims.
(Ct. Rec. 37).  Plaintiff is proceeding pro se.  Defendants are
represented by Steven James Nash and Mary C. McLachlan.

        **BACKGROUND**

        Plaintiff, a prisoner at the Washington State Penitentiary,
brings this *pro se* civil rights complaint pursuant to 42 U.S.C. §
1983.  Plaintiff seeks declaratory and injunctive relief, as well as
monetary damages, claiming First, Eighth and Fourteenth Amendment
violations.

        Plaintiff states she is a male-to-female transsexual who has
obtained a legal name change.  She contends her former name is
spiritually and psychologically offensive to her.  She claims her
"legally adopted religious name" is a symptom of acute Gender Identity

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 1

Disorder ("GID") or transsexualism.  Plaintiff complains Defendants have refused to recognize her legally adopted "religious name."

Plaintiff asserts she is forced to attend school-programming using her committed name which is "incongruous of her religious beliefs, and debilitating her by undoing years of psycho-therapy for transsexualism."  She argues she should be exempt from attending school-programming based on her various medical conditions and her custody status.  Plaintiff also complains prison officials have refused to deliver her mail if it bears her "religious name."

**PROCEDURAL HISTORY**

On December 30, 2008, Defendants filed a motion for summary judgment.  (Ct. Rec. 37).  The hearing on Defendants' motion for summary judgment was noted for February 18, 2009.  (Ct. Rec. 40).  However, on January 16, 2009, the Court granted Plaintiff additional time, through February 20, 2009, to respond to Defendants' motion for summary judgment and moved the hearing date to March 2, 2009.  (Ct. Rec. 48).  Plaintiff filed a response in opposition to Defendants' motion for summary judgment on March 12, 2009.  (Ct. Rec. 56).  On March 23, 2009, Defendants filed a reply in support of their motion for summary judgment.  (Ct. Rec. 59).  The matter is now before the Court.

**DISCUSSION**

**I.    Summary Judgment Standard**

A moving party is entitled to summary judgment when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex*

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 2

*Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273-74 (1986).  A material fact is one "that might affect the outcome of the suit under the governing law[.]"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  A fact may be considered disputed if the evidence is such that the fact-finder could find that the fact either existed or did not exist.  *Id.* at 249, 106 S.Ct. at 2511 ("all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury . . . to resolve the parties' differing versions of the truth" (quoting *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288-89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968))).

The party moving for summary judgment bears the initial burden of identifying those portions of the record that demonstrate the absence of any issue of material fact.  *T.W. Elec. Service, Inc. v. Pac. Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).  Only when this initial burden has been met does the burden of production shift to the nonmoving party.  *Gill v. LDI*, 19 F.Supp. 2d 1188, 1192 (W.D. Wash. 1998).  Inferences drawn from facts are to be viewed in the light most favorable to the non-moving party, but that party must do more than show that there is some "metaphysical doubt" as to the material facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986).

Here, the facts upon which the Court relies are either undisputed or established by evidence that permits but one conclusion concerning the fact's existence.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 3

II.  **Plaintiff's Claims**

Plaintiff's complaint (Ct. Rec. 1) establishes the following five issues:

1.  Whether Plaintiff's First Amendment rights have been violated by the DOC's policy regarding use of committed names.

2.  Whether the DOC has substantially burdened Plaintiff's right to freely exercise her religion in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA").

3.  Whether Plaintiff has been subjected to retaliation for engaging in legally protected activity.

4.  Whether Plaintiff was denied her Fourteenth Amendment right to the equal protection of the law.

5.  Whether Plaintiff has been subjected to cruel and unusual punishment in violation of the Eighth Amendment.

III. **Analysis**

A.  ***First Amendment***

Plaintiff claims that her First Amendment rights have been violated by the prison forcing her to attend school-programming using her committed name which is "incongruous of her religious beliefs, and debilitating her by undoing years of psycho-therapy for transsexualism."  She also argues that prison officials have violated her First Amendment rights by refusing to deliver her mail if it bears her "religious name."

The First Amendment to the United States Constitution provides that Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof.  U.S. Const.,

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 4

amend. I.  The United States Supreme Court has held that prisoners retain their First Amendment rights, including the right to free exercise of religion.  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).  A human being does not cease to be human because the human being is a prisoner of the state.  *Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir. 1993).  The Court has also recognized that limitations on a prisoner's free exercise rights arise from both the fact of incarceration and from valid penological objectives.  *O'Lone*, 482 U.S. at 348; *McElyea v. Babbit*, 833 F. 2d 196, 197 (9th Cir. 1987).  "The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security."  *O'Lone,* 482 U.S. at 348.  *Turner v. Safley,* 482 U.S. 78, 89 (1987), provides the test for balancing those interests: "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."

The *Turner* case sets forth four factors to be considered in determining when a regulation is reasonably related to legitimate penological interests.  First, there must be a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it."  *Id.* at 89.  Second, whether there are "alternative means of exercising the right that remain open to prison inmates" must be assessed.  *Id.*  Third, "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally" must be determined.  *Id.*  Fourth, "the absence of ready

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 5

alternatives" to the regulation must be explored.  The "existence of obvious, easy alternatives may be evidence that the regulation is not reasonable."  *Id*.

However, before analyzing a prison regulation under *Turner,* in a claim arising under the First Amendment's Free Exercise Clause, an inmate must first satisfy two criteria: 1) the religious belief is sincerely held and 2) the claim must be rooted in religious belief. *Malik v. Brown*, 16 F.3d 330 (9th Cir. 1994).  If these prerequisites are established, then the reasonableness of a prison policy is determined pursuant to the factors articulated in *Turner*.  "In order to establish a free exercise violation, [a plaintiff] must show the defendants burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith."  *Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997).  The burden imposed must be substantial, and not merely an inconvenience.  *Id*. at 737.

Plaintiff asserts that her 1993 name change was mandated by God when she was studying both Wicca and Noahide.  (Ct. Rec. 39-2 at 38). However, Plaintiff has not demonstrated that her name change was prompted by a particular religious observance nor explained how the practice of her religion would be impacted by the alleged inability to use her "religious name."  Nevertheless, even assuming Plaintiff's use of her "religious name" is a central tenet of her religion, the undisputed facts demonstrate that Defendants have not denied her that right.  As noted by Defendants, Plaintiff is required to use her committed name in all matters relating to her incarceration, Wash. Rev. Code 72.09.540, but she has not been prevented by Defendants from

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 6

using her legal name in personal communications.   (Ct. Rec. 38 at 4-5).

     Even if the Court were to find that Defendants have imposed a substantial burden on Plaintiff's sincerely held religious beliefs, Defendants' continued use of Plaintiff's committed name is reasonable under *Turner*.

     The DOC regulation challenged by Plaintiff, 400.280, requires Plaintiff to use her committed name on any communications between her and staff, in all matters related to her incarceration, and in her use of the United States mail.   The offender may add the legally changed name after the committed name using an A.K.A. designation for the legally changed name.   (Ct. Rec. 39 ¶ 6).

     With respect to Plaintiff's use of the Untied States mail, the Ninth Circuit has already analyzed, under *Turner*, the DOC regulation and found that the DOC "has a legitimate interest in continued use of an inmate's committed name" and that "allowing an inmate to use both his religious and committed names 'is a reasonable middle ground between absolute recognition of the plaintiff's [religious name] and the prison interests of order, security and administrative efficiency.'"   *Malik v. Brown*, 16 F.3d 330, 334 (9th Cir. 1994) (quoting *Felix v. Rolan*, 833 F.2d 517, 519 (5th Cir. 1987)).   The Ninth Circuit held that while prisons are required to take simple measures to accommodate a prisoner's First Amendment rights, allowing a prisoner to put his religious name next to his committed name on mail is an "obvious, easy" accommodation.   *Malik*, 16 F.3d at 334.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 7

Consequently, pursuant to *Malik* and *Turner*, it is apparent Defendants have not violated Plaintiff's constitutional right to the free exercise of her religion as it pertains to Plaintiff's usage of the United States mail.

With respect to Plaintiff's contention that her religious beliefs are offended by the DOC requirement that she use her committed name while attending school-programming, the Court finds that the regulation is likewise reasonable under *Turner*.

### 1.    Legitimate Penological Interests

As indicated by Defendants, for the safety and security of the DOC facility, offenders in the custody of DOC must be readily identifiable by one name. (Ct. Rec. 39 ¶ 11). Standardized identification avoids confusion, and helps to ensure the safety and security of staff, offenders, and the public. *Id*. Offenders are identified in prison by the use of identification badges that contain a photograph, the offender's name, and the DOC number. Staff members learn to identify offenders by a quick glance at the name on the ID badge and must be able to make the identification quickly and with confidence. (Ct. Rec. 39 ¶ 11). If an offender were allowed to be identified by more than one name within the prison, it would create uncertainty and confusion on the part of the staff. (Ct. Rec. 39 ¶ 12). For example, staff persons receiving communications regarding an offender might not know who the communication was about if they knew the offender by a different name. *Id*.

As indicated by Defendants, it is not enough that an offender be identified by his DOC number. A staff person can generally only

identify an offender by DOC number by looking it up on a computer or log.  Taking the time to look up a DOC number in order to identify an offender could seriously slow down the identification process, which may jeopardize the safety and security of the facility.  In addition, offenders do not have the ability to look up the DOC numbers of other offenders and are only able to identify other offenders by name.  (Ct. Rec. 39 ¶ 13).

Furthermore, staff persons must be able to reconstruct full and clear historical information regarding offenders.  Confusion regarding the identity of an offender could frustrate the prison's ability to investigate claims made by or about an offender, which could inhibit the ability to resolve those claims.  (Ct. Rec. 39 ¶ 12).  For example, if an offender was known by one name in the education department and then was known by another name in the rest of the prison, other offenders might become confused about the identity of that offender.  This could create a security concern in the event that another offender needed to report on that offender's activities to staff.  (Ct. Rec. 39 ¶ 36).

Moreover, offenders' criminal records are maintained by courts under their committed names, and any official communication from the courts or regarding the criminal conviction will necessarily occur using the committed name.  For example, legal appeals, payment of Legal Financial Obligations ordered by the court and paid through DOC provided inmate accounts, requests for commutations, and community custody supervision all require the use of the committed name.  In fact, the DOC is statutorily required to collect Legal Financial

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 9

Obligations owing to any Washington State Superior Court as well as child support owed under a support order.  Wash. Rev. Code 72.09.111, 72.09.480.  (Ct. Rec. 39 ¶ 14).

These undisputed facts demonstrate that the prison has legitimate penological interests for requiring that offenders be identifiable by their committed name.

### 2.    Alternative Means of Expressing Religious Belief

Plaintiff's current religion is Noahide, which she describes as a righteous non-Jew.  Plaintiff explains that the beliefs of the Noahide religion "mostly adhere to the tenants of Judaism."  (Ct. Rec. 30 ¶ 18).  When asked what special holidays, foods, customs, and prayer rituals the Noahide religion adheres to, Plaintiff stated they were the same as those found in Judaism.  *Id*.  Importantly, Plaintiff does not allege that she has been denied the opportunity to participate in any of the special holidays, foods, customs, or prayer rituals practiced by her religion.  Moreover, Plaintiff has not adequately identified how being required to use her committed name in her classes infringes on the exercise of her religion.[1]  *See Overton V. Bazzetta*, 539 U.S. 126 (2003) (the burden is not on the state to prove the validity of the challenged prison regulation but instead is on the inmate to disprove it).  Defendants maintain that there are

---

[1]Plaintiff states that her practice of her religion is impacted by the inability to use her legal name because, "How can I adhere to my religion if God expects me to be known as Sarah and then they don't allow Sarah to exist?" and that "If I can't express myself as who I am, I have to be who I am to everybody, not just now and then, not just a thing in my mind.  It has to be – it has to be who I am.  Ms. Sarah has a right to live and exist."  (Ct. Rec. 39 ¶ 21).

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 10

alternative means which remain open to Plaintiff in order for her to exercise her religious freedom, and Plaintiff has provided nothing to rebut this assertion.

### 3. Impact on Guards and Other Inmates

It is a primary goal of prison systems to promote a safe and secure environment within the prison for staff, inmates, and community members. *Bell v. Wolfish,* 441 U.S. 520, 546 (1979). "[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of . . . convicted prisoners . . . ." *Id.* Allowing Plaintiff to use her legal name for school rather than her committed name would create a security risk in the prison, which would have an adverse effect on staff, other inmates, and prison resources. *See supra.* Standardized identification avoids confusion, and helps to ensure the safety and security of staff, offenders, and the public. As indicated above, these factors establish that the prison has legitimate penological interests for requiring offenders to be readily identifiable by their committed name.

### 4. The Absence of Ready Alternatives

Offenders are not prohibited from using their legal names, nicknames, or other forms of identification when communicating informally with other offenders or with clergy persons who are not state employees. (Ct. Rec. 39 ¶ 17). In addition, Plaintiff can change the name on her school records upon her release from prison to reflect only the legally changed name. (Ct. Rec. 39 ¶ 37).

///

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 11

However, because of the security concerns that would arise if Plaintiff were allowed to use her non-committed name in school, there is an absence of reasonable alternatives that would accommodate Plaintiff's request with a diminimus impact on the DOC. The Court is convinced that the DOC employs the least restrictive means in requiring offenders to use their committed names.

Accordingly, Defendants have satisfied the four factors set forth in *Turner* thus demonstrating that the regulation requiring Plaintiff to use her committed name for her prison education classes is reasonably related to legitimate penological interests.

Based on the foregoing, the Court finds that as a matter of law Plaintiff's constitutional right to the free exercise of her religion has not been violated by Defendants in this case.

### B.    *RLUIPA*

Under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), the DOC cannot impose a substantial burden on the religious exercise of a prisoner unless the imposition of the burden is in furtherance of a compelling government interest and is the least restrictive means of furthering the interest. RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution. . . , even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling government interest; and
>
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 12

As determined in Section A, above, the Court finds that Plaintiff has failed to adequately allege that Defendants' requirement that she use her committed name in certain circumstances burdens the exercise of her religion.  While Plaintiff asserts that her 1993 name change was mandated by God, Plaintiff has not demonstrated that her name change was prompted by a particular religious observance nor has she adequately explained how the practice of her religion would be impacted by the alleged inability to use her "religious name." Plaintiff has thus failed to show that the use of her "religious name" is a central tenet of her religion.

In any event, the undisputed facts demonstrate that Defendants have not denied her that right.  As noted by Defendants, Plaintiff is required to use her committed name in all matters relating to her incarceration, Wash. Rev. Code 72.09.540, but she has not been prevented by Defendants from using her legal name in personal contacts.  (Ct. Rec. 38 at 4-5).

Moreover, as discussed above, Defendants have demonstrated that the regulation furthers a compelling government interest and is the least restrictive means of furthering that compelling interest.  *San Jose Christian College v. Morgan Hill*, 360 F.3d 1024 (9th Cir. 2004). The Court finds that Defendants have not only shown legitimate interests for First Amendment purposes, i.e., maintaining the safety and security of the facility, avoiding confusion, providing speed and efficiency in the operation of the institution, and preventing potential difficulty with the investigation of claims, but these reasons also amount to compelling justification for requiring

offenders to use their committed name in all matters relating to their incarceration under RLUIPA.[2]

Defendants have also demonstrated that the least restrictive means of furthering those compelling interests has been employed. Offenders are not prohibited from using their legal names, nicknames, or other forms of identification when communicating informally with other offenders or with clergy persons who are not state employees. (Ct. Rec. 39 ¶ 17). Offenders are allowed to use their new names in addition to their committed names on official communications. When sending or receiving mail, offenders may add the legally changed name after the committed name using an A.K.A. designation for the legally changed name. (Ct. Rec. 39 ¶¶ 4, 6). In addition, with respect to school programming, offender can change the name on their school records upon release from prison to reflect only the legally changed name. (Ct. Rec. 39 ¶ 37). The Court thus concludes that the regulation furthers a compelling government interest and the DOC employs the least restrictive means in enforcing the regulation.

---

[2]Although not discussed in detail above, the Court finds that compelling reasons also exist for requiring offenders to use their committed names when sending or receiving mail. When processing prison mail, it is imperative to require clear identification for the efficient tracking, management, and inspection of mail. Specific identification aids in avoiding mis-routing and return delivery. Having the committed name as the first name on the mail expedites the processing of the mail in the mailroom because that is the name used in all areas of the prison. (Ct. Rec. 39 ¶ 15). In addition, by having an offender's committed name first on outgoing mail, the prison can ensure that offenders are not misrepresenting themselves to the public. It assists in deterring criminal intentions via mail and ensures that recipients of inappropriate mail from offenders can readily identify the offending individual so he or she is held accountable. (Ct. Rec. 39 ¶ 16).

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 14

Therefore, Defendants are entitled to summary judgment under a RLUIPA claim as well.

### C.    Retaliation

Plaintiff alleges that Defendants Snively, Sinclair, Uttecht, and Clarke retaliated against her for letters she wrote to Governor Gregoire and Stephen Sinclair.  (Ct. Rec. 1).

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a Section 1983 claim.  *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see, also, Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).  To establish a prima facie case, Plaintiff must allege and establish that Defendants acted to retaliate for her exercise of a protected activity, and that Defendants' actions did not serve a legitimate penological purpose. *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994); *Pratt*, 65 F.3d at 807.  The injury asserted in retaliation cases is the retaliatory conduct's chilling effect on the plaintiff's First Amendment rights. *Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997); *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000).

A plaintiff asserting a retaliation claim must demonstrate a "but-for" causal nexus between the alleged retaliation and the plaintiff's protected activity (i.e., filing a legal action). *McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir. 1979); *see, Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977).  The prisoner must submit evidence, either direct or circumstantial, to establish a link between the exercise of constitutional rights and the

allegedly retaliatory action. *Pratt*, 65 F.3d at 806. Timing of the events surrounding the alleged retaliation may constitute circumstantial evidence of retaliatory intent. *Pratt*, 65 F.3d at 808; *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989).

Here, Plaintiff was not subjected to adverse action because she was engaging in legally protected activity. Rather, Plaintiff was infracted because she continued to use her non-committed name on official communications and mail, despite being repeatedly advised that she was required to use her committed name in all mail correspondence and was responsible for informing her correspondents regarding rules governing the mail. The prison simply required Plaintiff to adhere to DOC policy and state law with regard to the use of her committed name. Plaintiff only received a sanction when she continued to violate the policy after receiving several warnings.

Plaintiff received no sanction for writing a letter to Governor Gregoire in April 2006, nor did she receive sanctions for her numerous subsequent attempts to use her non-committed name on official communications. (Ct. Rec. 39 ¶ 27). Plaintiff was simply cautioned that she would be infracted for not following the statute requiring that Plaintiff use her committed name on all official communications. *Id*. Despite that caution, Plaintiff continued to use her non-committed name on official communications and mail.

Between May 9, 2007, and September 26, 2007, Plaintiff was issued twenty-one (21) mail restriction notices informing her that her mail was restricted because her committed name was required. (Ct. Rec. 39 ¶ 28). Plaintiff was repeatedly warned by the mailroom staff, the

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 16

Associate Superintendent, the Assistant Secretary of DOC, and the Deputy Secretary of the DOC that she was required to use her committed name on all correspondence and that she was responsible for informing her correspondents regarding the rules governing the mail. (Ct. Rec. 39 ¶¶ 28-30). Despite these numerous warnings, Plaintiff continued to attempt to use her non-committed name on official communications.

Finally, on January 11, 2007, Plaintiff was issued an infraction because she wrote a letter to Associate Superintendent Sinclair from "MS. Sara J. Babcock 995087 a.k.a. face pseudonym: john d. Babcock." (Ct. Rec. 39 ¶ 31). Plaintiff received the infraction on January 11, 2007, because she refused to follow the requirement that she use her committed name on official correspondence.

The Court finds that the foregoing undisputed facts show that Plaintiff was infracted for her violations of prison policy and not in retaliation for writing letters.

Moreover, Plaintiff's infraction was related to legitimate penological interests. As indicated above, the requirement that offenders use their committed names in all matters relating to their incarceration furthers the government's interests in maintaining the safety and security of the facility, avoiding confusion, providing speed and efficiency in the running of the institution, preventing potential difficulty with the investigation of claims, providing for mailroom efficiency and deterring inappropriate mail being sent to the public. *Supra*.

Accordingly, the Court finds that Defendants' action of infracting Plaintiff served the legitimate penological purposes of the

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 17

facility and was not based on a retaliatory motive.  Based on the undisputed facts in the record, Plaintiff cannot establish her retaliation claim.  Therefore, Defendants' motion for summary judgment is granted with respect to Plaintiff's retaliation claim.

### D.    *Equal Protection*

Plaintiff contends the DOC policy regarding name changes has not been applied equally.  Specifically, she asserts that some offenders have received mail despite using a legally changed name.  Plaintiff alleges that she is treated differently than other offenders because she is gender dysphoric.

Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose.  *San Antonio School District v. Rodriguez*, 411 U.S. 1 (1972).  In order to state a Section 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show that defendants acted with intentional discrimination against plaintiff or against a class of inmates which included plaintiff.  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (equal protection claims may be brought by a "class of one"); *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *Federal Deposit Ins. Corp. v. Henderson*, 940 F.2d 465, 471 (9th Cir. 1991); *Lowe v. City of Monrovia*, 775 F.2d 998, 1010 (9th Cir. 1985).  "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights."  *Barren*, 152 F.3d at 1194.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 18

Plaintiff contends that she was denied equal protection of the law because other inmates have received mail despite using non-committed names.  However, it is undisputed that Plaintiff has also received mail at times despite using her legally changed name.  This is consistent with the DOC policy, which states, "Staff will make reasonable efforts to identify the offender for whom the mail was intended." (Ct. Rec. 39 ¶ 26).  The fact that staff will attempt to identify the recipient of improperly addressed mail does not mean that offenders are allowed to deliberately and repeatedly violate the policy.  Plaintiff had been made aware of the requirement for her mail, yet she continued to deliberately violate it, and that is why Plaintiff was infracted.  Defendants did not act to intentionally discriminate against Plaintiff.

Furthermore, even if Plaintiff was able to establish a discriminatory purpose, Defendants meet the *Turner* reasonable relationship test.  *Supra*.  Accordingly, Defendants' motion for summary judgment is granted with respect to Plaintiff's equal protection claim.

### E.    Death Threats

Plaintiff has alleged that mailroom staff have made "death threats" against her by crossing out her legal name on mail.

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter,

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 19

sanitation, medical care, and personal safety.  *Id.*; *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982).  Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, (9th Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

The deliberate indifference standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer v. Brennan*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  Second, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id.* at 837.

Prison officials may be liable under the Eighth Amendment for the assault of a transsexual inmate by another inmate if the officials knew that the victim faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable steps to prevent it. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  The Eighth Amendment, however, "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), and does not provide relief for perceived acts of negligence on the part of prison officials.  An allegation of mere threats alone fails to state a claim of cruel and unusual punishment under the Eighth Amendment. *Gaut v. Sunn*, 810 F.2d 923,

///

///

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 20

925 (9th Cir. 1987); *see Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (neither verbal abuse nor the use of profanity violate the Eighth Amendment).

Here, Plaintiff's interpretation of the crossing out of her legal name on her mail as a "death threat" does not rise to the level of an Eighth Amendment violation.  Plaintiff has failed to set forth facts from which the Court could infer named Defendants were deliberately indifferent to her health or safety.  Therefore, Defendants' motion for summary judgment is granted with respect to Plaintiff's Eighth Amendment claim pertaining to the mailroom staff's alleged "death threats".

**F.    School-Programming**

Plaintiff states, sometime prior to December 2005, Defendants Harold Clarke, Jeffrey A. Uttecht and their subordinates required her attendance in basic education classes.  Plaintiff indicates she initially refused and was punished for disobeying an order.  She was sanctioned with confinement to quarters.  She claims she was then sanctioned again when her programming was taken away for the same incident.  She was then locked down Monday-through-Friday from 8:00 a.m. until 4:30 p.m.

The Supreme Court has determined a prisoner has no federal or state protected liberty interest in due process when the sanction imposed neither extends the length of her sentence nor is "atypical and significant" in relation to the "ordinary incidents of prison life."  *See Sandin v. Conner*, 515 U.S. 472, 483-487 (1995).

///

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 21

1    Plaintiff has stated no facts indicating the conditions of
2    confinement to quarters constituted an "atypical and significant
3    hardship on the inmate in relation to the ordinary incidents of prison
4    life." *Id.* at 484.  There are no facts to support an allegation the
5    sanctions presented "a dramatic departure from the basic conditions"
6    of the inmate's criminal sentence.  The Due Process Clause does not
7    protect every change in the conditions of confinement, even ones
8    having a "substantial adverse impact" on the prisoners.  *Meachum v.*
9    *Fano,* 427 U.S. 215, 224 (1976).  Plaintiff has failed to state a
10   cognizable constitutional claim regarding sanctions imposed for her
11   refusal to attend classes.
12       Plaintiff also alleges that she is being "tortured" by the
13   requirement that she earn school credits under her committed name.
14   She claims this name offends her religious beliefs.  Plaintiff asserts
15   Defendants Harold Clarke, Ruben Cedeno, Jeffrey A. Uttecht, Stephen
16   Sinclair, and Hal Snively, are "hiding" her "legally adopted religious
17   name" and her "acute Gender Identity Disorder (GID) or Gender
18   Dysphoria," to ensure she is "abused, years of psychotherapy undone,
19   and [she is] debilitated."  (Ct. Rec. 1 at 14-15).
20       Plaintiff cites the following example of alleged "abuse" by
21   Defendants Harold Clarke, Ruben Cedeno, Jeffrey Uttecht, Steven
22   Sinclair and Hal Snively.  She claims that on or about December 22,
23   2006, she was taken to an outside facility for an examination of a
24   tumor on her pituitary gland.  During the course of the examination,
25   the endocrinologist looked at Plaintiff's body, inquired about
26   estrogen therapy and stopped the exam to obtain an accurate medical

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 22

history.  Plaintiff contends the failure to record her legally adopted religious name hid her GID condition and could have had disastrous results to her health.  Contrary to Plaintiff's assertions, however, mere speculations are insufficient to state an Eighth Amendment violation.

Plaintiff also lists various medical conditions, claiming these, as well as her protective custody status, should exempt her participation in the schooling-program.  For an inmate to state a claim under Section 1983 for medical mistreatment or denial of medical care, the prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Here, Plaintiff admits she has received medication, medical treatment, or is being monitored, for each of these conditions, including tinitis, carpal tunnel syndrome, and a tumor on her pituitary gland.  She does not assert medical restrictions have actually been issued which would exempt her from classes.

With respect to her custody status, a due process claim requires that the plaintiff be deprived of a constitutionally protected liberty or property interest.  *See Rizzo v. Dawson*, 778 F.2d 527, 530 (9th Cir. 1985).  Prisoners do not have a constitutionally recognized liberty interest in a particular security classification or prison placement.  *Hewitt v. Helms*, 459 U.S. 460, 468 (1983).  Washington State law also does not create such a liberty interest.  *See Hernandez v. Johnston*, 833 F.2d 1316, 1319 (9th Cir. 1987); *Smith v. Noonan*, 992 F.2d 987, 989 (9th Cir. 1993).  Therefore, Plaintiff additionally does

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 23

not have a cognizable claim stemming from her classification.  *See*

*Hewitt*, 459 U.S. at 468; *Hernandez*, 833 F.2d at 1319.

Based on the foregoing, the Court finds that Defendants are
entitled to summary judgment with respect to all claims pertaining to
Plaintiff's school-programming.

### G.    Defendants Clarke and Uttecht

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or
> causes to be subjected, any citizen of the United States . . . to
> the deprivation of any rights, privileges, or immunities secured
> by the Constitution . . . shall be liable to the party injured in
> an action at law, suit in equity, or other proper proceeding for
> redress.

42 U.S.C. § 1983.  The statute plainly requires that there be an
actual connection or link between the actions of the defendants and
the deprivation alleged to have been suffered by plaintiff.  *See*
*Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Rizzo v.*
*Goode*, 423 U.S. 362 (1976).  The Ninth Circuit has held that "[a]
person 'subjects' another to the deprivation of a constitutional
right, within the meaning of section 1983, if he does an affirmative
act, participates in another's affirmative acts or omits to perform an
act which he is legally required to do that causes the deprivation of
which complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th
Cir. 1978).

Plaintiff has failed to allege that Defendants Clarke or Uttecht
personally participated in causing the deprivation of a constitutional
right, but instead appears to have named these individuals as
defendants merely because they were the DOC Secretary and WSP
Superintendent, respectively.  Defendants in a Section 1983 action

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 24

cannot be held liable based on a theory of respondeat superior or vicarious liability. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Bergquist v. County of Cochise*, 806 F.2d 1364, 1369 (9th Cir. 1986). Accordingly, the Court finds that the claims against Defendants Clarke and Uttecht should be dismissed.

### H.    Qualified Immunity

Based on the above conclusions, there is no genuine issue for trial with regard to all of Plaintiff's claims. Consequently, the Court need not reach Defendants' argument that they are also entitled to qualified immunity from this lawsuit. Nevertheless, the Court additionally notes that the claims against Defendants should be barred under the doctrine of qualified immunity.

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show Defendants' conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If, and only if, a violation can be made out, the next step is to ask whether the right was clearly established. *Id.* The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." *Saucier,* 533 U.S. at 201. "[T]he right the

///

///

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 25

official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202 (citation omitted). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

There is no clearly established right that allows prisoners to use a legally changed name rather than their committed name. On the contrary, Washington State law requires that offenders continue to use their committed names for all official communications with the DOC. Wash. Rev. Code 72.09.540. Furthermore, Washington State law requires that the DOC ensure all offenders participate in work and educational programs and that it link the offenders' participation in those programs to the receipt or denial of earned early release days and other privileges. Wash. Rev. Code 72.09.130(1). A reasonable prison official would believe it was lawful to require Plaintiff to use her committed name on all correspondence and communication within the DOC and to discipline Plaintiff for refusing to attend her classes under her committed name. Accordingly, Defendants would additionally be entitled to qualified immunity in this case.

**CONCLUSION**

Summary judgment for all named Defendants on all of Plaintiff's claims is appropriate because Plaintiff has failed to offer sufficient

///

///

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 26

evidence to raise a genuine issue of material fact that any of her rights under 42 U.S.C. § 1983 were violated.  Accordingly, **IT IS HEREBY ORDERED as follows:**

1.  Defendants' Motion for Summary Judgment (**Ct. Rec. 37**) is **GRANTED**.

2.  Judgment shall be entered in favor of Defendants.

3.  Plaintiff's action is dismissed in its entirety.

**IT IS SO ORDERED.**  The District Court Executive is hereby directed to enter this order, provide copies to Plaintiff and counsel for Defendants, **enter judgment in favor of Defendants** and **CLOSE THE FILE**.

**DATED** this  31st  day of March, 2009.

                            S/Fred Van Sickle
                         Fred Van Sickle
                  Senior United States District Judge

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 27